# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

PROXENSE, LLC,

      Plaintiff,

  vs.

SAMSUNG ELECTRONICS, CO., LTD.
AND SAMSUNG ELECTRONICS
AMERICA, INC.,

      Defendants.

Case Nos. 6:21-cv-00210-ADA

**JURY TRIAL DEMANDED**

## PLAINTIFF PROXENSE LLC'S SUR-REPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................1

II.  DISPUTED TERMS ...........................................................................................................1

    A.   THE 730 PATENT FAMILY ....................................................................................1

        1.   "Persistently storing … a tamper proof format written to a storage element on the integrated device that is unable to be subsequently altered" (730:1, 15) / "A tamper proof format written to the memory that is unable to be subsequently altered (730:8) ..........................................................................1

        2.   "Device ID code" (730:1, 3, 8, 10, 12, 15) / "ID code" (905:1-3, 8-11, 13, 14; 989:1, 2, 4-8) ........................................................................................5

        3.   "Access message" (730:1, 8, 12, 15; 905: 1, 9, 13) .....................................6

        4.   Receiving an access message from the agent allowing the user to access an application" (730:1, 8, 15) / "Receiving an access message from the agent" (730:12) / "An access message from the third-party trusted authority-indicating that the third-party trusted authority successfully authenticated the ID code" (905: 1, 9, 13) / "A transaction being completed responsive to the third-party trusted authority successfully authenticating the ID code" (989: 1, 5) / "A transaction is completed responsive to successful authentication of the ID code" (989: 7) ..............8

        5.   "Wherein the biometric data and the scan data are both based on a fingerprint scan by the user" (730: 5) .........................................................9

    B.   THE 188/700 PATENT FAMILY .............................................................................10

        1.   "Hybrid device" (188: 1-12, 15, 20; 700: 1-13, 16) ..................................10

        2.   "Personal digital key" (188: 1, 10; 700: 1, 11) ..........................................11

        3.   "Biometric Information" (188: 1, 4, 10, 13; 700: 4, 14) ............................12

        4.   "Financial Information" (188: 5, 6, 14, 17; 700: 1, 11) ..............................12

        5.   "Receiver-decoder circuit" (188: 1, 10; 700: 1, 11) ...................................13

        6.   "Inheritance Information: (188: 9, 18; 700: 9, 19) .....................................14

        7.   "Enablement signal" (188: 10-12, 17; 700: 11-13, 18) ..............................15

III. CONCLUSION ..................................................................................................................15

# **TABLE OF AUTHORITIES**

*3M Innovative Properties Co. v. Tredegar Corp.*,
　　725 F.3d 1315 (Fed. Cir. 2013)　........................................................................... 14

*Arlington Industries, Inc. v. Bridgeport Fittings,*
　　632 F.3d 1246 (Fed. Cir. 2011) ...................................................................... 11, 13

*CloudofChange, LLC v. NCR Corp.*,
　　No. 6-19-CV-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020) .......... 12

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
　　133 F.3d 1473, (Fed. Cir. 1998). ........................................................................... 2

*Regents of Univ. of Minnesota v. AGA Medical Corp.*,
　　717 F.3d 929 (Fed. Cir. 2013) ............................................................................... 4

*Saunders Grp., Inc. v. Comfortrac, Inc.,*
　　492 F.3d 1326,  (Fed. Cir. 2007) ........................................................................... 4

*SIPCO, LLC v. Amazon.com, Inc.*,
　　No. 2:08-CV-359-JRG, 2012 WL 5195942, (E.D. Tex. Oct. 19, 2012) .............. 4, 5

*Tinnus Enterprises, LLC v. Telebrands Corp.,*
　　733 F. App'x 1011, (Fed. Cir. 2018) ....................................................................... 9

# I.    INTRODUCTION

Proxense's proposed constructions are tied to the intrinsic evidence, which Samsung attempts to mischaracterize. In particular, Samsung's proposed constructions misrepresent the prosecution history and disregard cannons of claim construction to impermissibly change the meaning of the claims. Samsung raises proposed constructions for the first time in its reply briefing, that it hopes the Court will now construe. Samsung also appears to have willfully ignored Proxense's operative set of proposed constructions, despite having received ample notice and an opportunity to address them, based on a misinterpretation of this Court's procedures regarding the refinement of the claim terms to be construed.[1] For the reasons detailed below and those previously detailed in Proxense's Responsive Claim Construction Brief (ECF No. 35, ("Resp. Br.")), the Court should adopt Proxense's proposed constructions.

# II.    DISPUTED TERMS

## A.    The 730 Patent Family

### 1.    "Persistently storing … a tamper proof format written to a storage element on the integrated device that is unable to be subsequently altered" (730:1, 15) / "A tamper proof format written to the memory that is unable to be subsequently altered (730:8)

| Proxense's Construction | Samsung's Construction |
|---|---|
| No construction necessary or possible, plain and ordinary meaning | Permanently storing in a form that prevents subsequent writing to store new data or modifications to existing data. |

As in its opening brief ("Op. Br.") Samsung improperly includes the entire phrase "A format for storing data that cannot be changed unless it is deleted and replaced" in the constructions

---

[1] Samsung appears to believe that once the Parties have exchanged terms to be construed, neither Party can propose compromises or alter its proposed construction to align with a proposed compromise with sufficient lead time before briefing begins. *See* Samsung Reply Br. at 2. Proxense is not aware of any authority that supports Samsung's rigid and preclusive position, and notes that adopting such a rule would tend to penalize efforts at compromise, which Proxense believes are helpful to promote efficient use of judicial resources.

attributed to Proxense.  *See* Samsung Reply Br. at 3. That was never Proxense's proposed construction for this phrase. Moreover, Proxense has consistently stated that such lengthy phrases are not proper "terms" to be construed by the Court, particularly where they include several discrete sub-terms (here, "persistently storing," "tamper-proof format," and "unable to be subsequently altered"). *See e.g. Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1476 (Fed. Cir. 1998) (generally describing the "terms" construed in by courts in *Markman* as "technical terms or words of art or special usages in the claims"). Moreover, Samsung's attempt to construe each of the above discrete sub-terms as identical to the larger phrase is contrary to the intrinsic evidence.

A review of the intrinsic evidence reveals why Samsung's proposed construction of these lengthy phrases is improper. The specification clearly defines "persistently storing" as storing in non-volatile memory. 730 Pat., 4:29-36 ("Persistent storage 226 *persistently stores* biometric data . . . .  Persistent storage 226 can include, for example, a ROM element, a flash memory element, or *any other type of non-volatile storage element*.") (emphasis added). Furthermore, only in claim 1 of the 730 Patent does "persistently storing" co-occur with "tamper proof format" and "unable to be subsequently altered." Claim 8 of the 730 Patent does not recite "persistently storing," "persistent storage", or other similar words. Additionally, none of the claims of the 905 and 989 Patents recite a "tamper proof format" or "unable to be subsequently altered." A single cooccurrence in claim 1 of the 730 Patent does not justify equating "persistent storage" to mean "unable to be subsequently altered" in claims of the 905 and 989 Patents, as Samsung attempts to do.

In addition, "tamper proof format" as used in claims 1 and 8 and the specification of the 730 Patent clearly modifies "*data*," not "persistently storing." In each of claims 1 and 8 of the 730

Patent, "tamper proof format" is preceded by "biometric data of a user and a plurality of codes and other data values comprising a device ID code uniquely identifying the integrated device and a secret decryption value." In these claims, the relationship between the biometric data, device ID, codes and other data values and "tamper proof" is defined by the preposition "in," indicating the manner in which the data is written, *i.e.* "in a tamper proof format."

Neither "tamper proofing" nor "persistent storage" are limited by the specification in the way Samsung argues. "**In one embodiment**, <u>at least some of persistent storage</u> 226 is a memory element that can be written to once but cannot subsequently be altered." 730 Pat., 4:31-33 (emphasis added). Even in this single embodiment, which Samsung tries to read as the sole embodiment, only some, not all, "persistent storage" is so limited that it "cannot subsequently be altered." Other persistent storage, therefore, can be subsequently altered even in this embodiment. Likewise, in this embodiment only, tamper-proofing prevents altering an instance of stored data by adding to it or modifying it, such that features cannot be added to or removed from saved biometric data.  730 Pat., 4:38-41. Tamper proofing alone is not itself limited in the specification to preventing deletion and replacement of stored data.

The prosecution of the 730 Patent does not require a different interpretation. During the prosecution of the 730 Patent, Proxense argued in the amendments filed July 5, 2011 and December 5, 2011, that the prior art did not disclose storing data "in a tamper proof format . . . that is unable to be subsequently altered." Op. Br. Ex. 4 at 10. ("The cited references do not disclose or suggest at least the claimed element of 'persistently storing biometric data of the user and a plurality of codes and other data values comprising a device ID code uniquely identifying the integrated device and a secret decryption value in a tamper-proof format written to a storage element on the integrated device that is unable to be subsequently altered.'"); Declaration of Conor

B. McDonough ¶¶ 1, Ex. I at 22 ("The cited references do not disclose or suggest at least the claimed element of "persistently storing . . . in a <u>tamper proof format</u> written to a storage element on the integrated device that is <u>unable to be subsequently altered</u>.") (emphasis in original). Proxense's arguments were not directed to either "tamper proof format" nor "persistently storing" in isolation but rather the longer phrase listed above. Samsung mischaracterizes these arguments by focusing only on convenient portions of the longer claim limitation being discussed.

To the extent the prosecution of the 730 Patent evidences a disclaimer, it cannot be applied to the claims of the 905 or the 989 Patents. While each also include claims reciting "persistently storing biometric data", they omit both "unable to be subsequently altered" and "tamper proof format." Due to these omissions, prosecution disclaimer cannot be carried across from the 730 Patent to the 905 and 989 Patents. *Regents of Univ. of Minnesota v. AGA Medical Corp.*, 717 F.3d 929, 943 (Fed. Cir. 2013) ("We have explained that 'when the purported disclaimers made during prosecution are directed to specific claim terms that have been omitted or materially altered in subsequent applications (rather than to the invention itself), those disclaimers do not apply.'") (*citing Saunders Grp., Inc. v. Comfortrac, Inc.,* 492 F.3d 1326, 1333 (Fed. Cir. 2007)).

In its opening brief Samsung did not request a construction of "persistently storing", "persistent storage", or "persistently stores." Samsung justifies its failure to brief "persistently storing" as a distinct term by claiming that it "would waste space and time" to brief this term, and relies on the inapposite case *SIPCO, LLC v. Amazon.com, Inc.* for the proposition that it would be "more natural" to construe the "larger term." Samsung Reply Br. at 2. But *SIPCO* dealt with a wholly different and far simpler issue: whether the court would construe the term "'remote devices' or the larger term 'plurality of remote devices.'" *SIPCO, LLC v. Amazon.com, Inc.*, No. 2:08-CV-359-JRG, 2012 WL 5195942, at *10 (E.D. Tex. Oct. 19, 2012). *SIPCO* does not address the issue

created by Samsung at all. The long phrases Samsung offers for construction contain several distinct claim terms like "tamper proof format" and "unable to be subsequently altered," which do not appear in claims of other asserted patent. Samsung is trying to give three or more distinct claim terms identical, redundant constructions across several patents. This is contrary to fundamental tenets of claim construction and represents an end-run around the limitations set by this Court on claim terms to be construed. Moreover, in its opening brief, Samsung only listed claims 1, 8, and 15 of the 730 Patent when requesting construction of these long phrases. Op. Br. at 3. Though Samsung mentions "subset terms" in a footnote, it provides no arguments in support nor any request for those terms to be construed as they relate to the other asserted patents. *Id*. n. 1. As shown above, Samsung's newly proposed construction for these terms is incorrect.

**2.    "Device ID code" (730:1, 3, 8, 10, 12, 15) / "ID code" (905:1-3, 8-11, 13, 14; 989:1, 2, 4-8)**

| Proxense's Construction | Samsung's Construction |
|---|---|
| Plain and ordinary meaning, or, if construed: A unique code identifying a device | The device-specific code that identifies the device |

Proxense's proposed construction tracks the language of the claims and the definition provided in the shared specification ("code or device ID . . . uniquely identifies the biometric key" 730 Pat. 4:45-47; 905 Pat. 5:41-42; 989 Pat. 5:59-61).[2] Samsung's construction adds nothing.

Samsung effectively concedes that adding "device specific" is redundant where it does not further limit the claims. In response to Proxense's concerns that "'device-specific' means that the

---

[2] Samsung complains, inaccurately, that Proxense "continues its approach of changing its proposed constructions" (Samsung Reply Br. at 5 n. 7) where Proxense suggested in its briefing that this term can be given its plain and ordinary meaning, while offering as an alternative the construction Proxense has consistently proposed, if the term is to be construed.  But there is nothing controversial about proposing during the briefing process that a term could, as is the default rule, be given its plain and ordinary meaning.

device is tied to one device ID code, which is immutable, and that such a claimed device cannot ever be given a different unique identifier . . . [and would] read out several embodiments in the specifications of all related patents" (Resp. Br.at 8-9), Samsung responded that "[i]t does not." (Samsung Reply Br. at 6). "Device specific," consequently, adds redundancy without distinction, and is inconsistent with the intrinsic evidence (Resp. Br. at 7-8).

The prosecution history cited by Samsung does not limit or change the meaning of the terms "device ID code" or "ID code." In the Final Rejection Mailed November 22, 2010, the Examiner asserted that the prior art disclosed transmitting a private decryption key. McDonough Decl.¶¶ 1, Ex. I  at 4.  Attempting to correct the Examiner, Proxense explained how the prior art operated. Op. Br. Ex. 4 at 26. Proxense noted that "the transmitted CRC, however, identifies a reference fingerprint image and does not identify the user's handheld device." *Id.* at 9. Proxense's explanation therefore, did not to alter the clear meaning of the claim language.

### 3.    "Access message" (730:1, 8, 12, 15; 905: 1, 9, 13)

| Proxense's Construction | Samsung's Construction |
|---|---|
| A signal or notification enabling or announcing access | A signal permitting a user to access |

Proxense's proposed construction for "access message" is consistent with the claims and encompasses numerous examples provided in the shared specification where an "access message" is merely one step in permitting access.

The claims use the term "access message" separately from the word "allowing." Claim 1 of the 730 Patent recites "an access message from the agent allowing the user access to an application, *wherein the application* is selected from a group consisting of a casino machine, a keyless lock, a garage door opener, an ATM machine, a hard drive, computer software, a web site and a file." Claim 12 recites that the claimed method "allow[s] the biometrically verified user

access" "in response to a positive access message." Claim 7 of the 905 Patent and claims 1 and 5 of the 989 Patent similarly define completing a financial transaction as including "accessing one or more from a group consisting of a casino machine, a keyless lock, an ATM machine, a web site, a file and a financial account." An "access message" is a part of allowing access but does not, itself, necessarily allow access. The claims define "accessing an application" and "completing a transaction" as including accessing both external resources (*i.e.*, casino machine, keyless lock, ATM, server hosting a website / file, etc.) and resources that may be internal to the integrated device or smartphone (*i.e.*, file, etc.). When the application is internal, a signal or notification enabling access informs the device, which then determines whether to allow access in response. When external, a notification shared with the user is sufficient. The claim language itself, therefore, supports Proxense's proposed construction.

Proxense's construction further finds support in the specification. As Samsung acknowledges, portions of the specification previously cited by Proxense "demonstrates the existence of notification messages." Samsung's Reply Br. at 7. These passages deal with embodiments of "access message." For instance, "[i]n one embodiment, an application module 330 allows access by a user after receiving a message from authentication module 310. At that point, application 330 can allow direct use by the user, or require that communications continue to pass through authentication module 310 for continued authentication." 730 Pat., 5:34-39. The specification makes clear, much like the claims, that the "message" can be separate from "allowing access" in some embodiments and that a device can determine whether that message is sufficient to allow access.

In addition, Samsung has filed three Petitions for *Inter Partes* Review relying on a substantially similar construction to that proposed here by Proxense. In each IPR petition, Samsung

took the position that "an optical and/or audible transaction status message" was equivalent to an "access message from an agent," "accessing an application," and "a transaction being completed responsive to the third-party trusted authority successfully authenticating the ID code." McDonough Decl.¶¶ 2-4, Exs. J-L. Samsung had not received Proxense's proposed constructions prior to filing these petitions. Having taken this position before the PTAB, Samsung cannot now take a different position here.

> **4.      Receiving an access message from the agent allowing the user to access an application" (730:1, 8, 15) / "Receiving an access message from the agent" (730:12) / "An access message from the third-party trusted authority-indicating that the third-party trusted authority successfully authenticated the ID code" (905: 1, 9, 13) / "A transaction being completed responsive to the third-party trusted authority successfully authenticating the ID code" (989: 1, 5) / "A transaction is completed responsive to successful authentication of the ID code" (989: 7)**

| Proxense's Construction | Samsung's Construction |
|---|---|
| No construction necessary or possible, plain and ordinary meaning | Receiving a signal from the agent permitting a user to access an application / Receiving a signal from the agent permitting a user to access |

Samsung once again mischaracterizes Proxense's proposed construction for these phrases, by improperly interposing Proxense's proposed construction for "access message" for these longer phrases. Proxense has only ever proposed that it is not possible or necessary to construe these phrases because they are too long and contain multiple terms, such as "access message", "application", and "transaction." Samsung dismisses these concerns, merely asserting "Proxense's term 'access message' is subsumed entirely within the 'receiving authentication…' term that Samsung briefed." Samsung Reply Br. at 2. Yet, Samsung has not requested the Court construe any of these other distinct terms. Additionally, "access message" does not appear in claims 1, 5 and 7 of the 989 Patent. Samsung, consequently, has not put forth any credible construction, nor

has it presented any basis for the Court to define these phrases other than according to their plain and ordinary meaning.

### 5. "Wherein the biometric data and the scan data are both based on a fingerprint scan by the user" (730: 5)

| Proxense's Construction | Samsung's Construction |
|---|---|
| No construction needed, plain and ordinary meaning | Invalid under §112 ¶4 |

Samsung's argument hinges on at least two inaccurate premises. First, that a person of ordinary skill in the art would *not* understand that the plain and ordinary meaning of "palm print" includes multiple fingerprints and/or a thumb print. Second, that the Examiner's Amendment that added the Markush group to claim 1, McDonough Decl.¶¶ 1, Ex. I at 35), caused dependent claim 5 (then pending as claim 7, which was unaltered by the Examiner's Amendment) to become indefinite. Both premises collapse under the well-established presumption "that an examiner would not introduce an indefinite term into a claim when he/she chooses to amend the claim for the very purpose of putting the application in a condition for allowance." *Tinnus Enterprises, LLC v. Telebrands Corp.*, 733 F. App'x 1011, 1020 (Fed. Cir. 2018) (citing *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939 (Fed. Cir. 1990) ("It is presumed that public officials do their assigned jobs")). Samsung offers no basis to rebut this presumption. Claim 5 of the 730 Patent, therefore, properly narrows the scope of the "biometric data" Markush group to a specific region of a palm print – a single "fingerprint".

B.  **The 188/700 Patent Family**

1.  **"Hybrid device" (188: 1-12, 15, 20; 700: 1-13, 16)**

| Proxense's Construction | Samsung's Construction |
|---|---|
| A device comprising an integrated personal digital key (PDK) and an integrated receiver-decoder circuit (RDC) | Indefinite |

The claim language here is readily understandable. Samsung argues that claims 2 and 3 of the 188 Patent create some sort of confusion about the "precise boundaries of what is 'on the hybrid device' and what is 'external to the hybrid device.'" Samsung Reply Br. at 9. But the claims use the terms "on" and "external" to reference locations relative to the hybrid device. Samsung never shows why the claim language is not clear on its face; Samsung's expert is able to discern it.

The claims explain the required operation of the "hybrid device." Claims 1 and 10 of the 188 Patent and claims 1 and 11 of the 700 Patent state "one or more of the integrated RDC and integrated PDK enabling one or more an application, a function and a service." An application, function, or service is "enabled" by a PDK when it receives information from a PDK in exchange for an access key. Similarly, an RDC "enable[es] one or more of an application, a function, and a service" when it forwards such a message to the application, function, or service. The claimed "hybrid device" carries out these functions. Dependent claim 2 of the 188 patent further limits claim 1, reciting "one or more of the application, the function, and the service are enabled at least in part on the hybrid device"; claim 3 adds the limitation that "at least one of the one or more of the application, the function, and the service are enabled at least in part on a device external to the hybrid device and communicatively coupled to the external RDC." Claims 2 and 3 of the 700 Patent recite substantially the same limitations. These limitations are clear. Samsung attempts to manufacture confusion by using one example in the specification of functions that a "hybrid device" might carry out but fails to explain why the claim is rendered unclear as a result.

### 2.   "Personal digital key" (188: 1, 10; 700: 1, 11)

| Proxense's Construction | Samsung's Construction |
|---|---|
| An operably connected collection of elements including an antenna and a transceiver for communicating with a RDC and a controller and memory for storing information particular to a user | A device that includes an antenna, a transceiver for communicating with the RDC and memory for storing information particular to a user |

Proxense has pointed to examples in the specification indicating an "integrated PDK" need not be a separate and discrete entity. Additionally, Proxense has explained why the drawings do not depict an "integrated PDK" as a separate and discrete entity. One such example is in FIG. 12 of the 188 patent, in which hybrid device 1102, containing a PDK 102a, has the form factor of a SIM card and provides the necessary functionality utilizing the existing components of a cell phone. 188 Patent, 14:26-32. Samsung's interpretation of this portion of the specification to limit the functionality to what is provided by RDC 304a requires removing PDK 102a from the SIM card hybrid device 1102 shown in FIG. 12. It also contradicts subsequent statements in the specification noting the use of PDK functionality provided by PDK 102a of the SIM card hybrid device 1102. *Id.*, 15:39-46. Samsung's interpretation, requiring deleting elements from a drawing and portions of the specification, cannot be correct.

Samsung continues to assert that "block diagrams" show structure rather than functional relationships. This is false. But even if true, it would not justify limiting the claims as Samsung proposes. *See Arlington Industries, Inc. v. Bridgeport Fittings,* 632 F.3d 1246, 1254 (Fed. Cir. 2011) ("[D]rawings in a patent need not illustrate the full scope of the invention.").

The claims' recitation of "a signal line for communication," requires communication among the collective of components that provide the PDK and RDC functions integrated into a hybrid device, like a cell phone, without requiring either of them to be a separate entity.

### 3. "Biometric Information" (188: 1, 4, 10, 13; 700: 4, 14)

| Proxense's Construction | Samsung's Construction |
|---|---|
| No construction necessary, plain and ordinary meaning | The fingerprint, palm print, retinal scan, iris scan, photograph, signature, voice sample, or DNA/RNA information that uniquely identifies an individual |

Samsung's reply fails to explain why the Court should depart from the default rule affording this term its plain and ordinary meaning, and never rebuts Proxense's arguments that Samsung's proposed construction would conflict with the doctrine of claim differentiation.

Moreover, the terms "biometric information," "biometric input," and "biometric profiles" are closely related. The specification clearly relates "biometric input" and "biometric profiles" with "biometric information." *See* 188 Pat., 3:27-30 ("A current biometric is received using biometric input 104. The sensor 108 then verifies the stored biometric (from service block 112A) against **the recently acquired biometric (from input 104).**") (emphasis added); *id.*, 6:45-47 ("APDK 102 can store multiple **biometric profiles**, **each comprising a different type of biometric information**.") (emphasis added). Nevertheless, Samsung asserts, without merit, that "biometric input" and "biometric profiles" referenced in the specification of the 188 Patent family would somehow be understood quite differently from "biometric information." Reply Br. at 11.

### 4. "Financial Information" (188: 5, 6, 14, 17; 700: 1, 11)

| Proxense's Construction | Samsung's Construction |
|---|---|
| No construction necessary, plain and ordinary meaning | Purchasing account numbers, such as the debit card, ATM card, or bank account numbers |

Samsung never explains why the Court should depart from the default rule that would define this simple term according to its plain and ordinary meaning. *See CloudofChange, LLC v. NCR Corp.,* No. 6-19-CV-00513-ADA, 2020 WL 4004810, at *1 (W.D. Tex. July 15, 2020). This

is not a complex or technical term, and it is within the everyday experiences of jurors.  Anyone attempting purchases through a website, for example, knows that a cardholder's name and address, an expiration date, and a CVV code, are required in addition to an account number. Likewise, paying at the pump or a kiosk with a credit/debit card requires providing the account holder's zip code or pin, *i.e.* credit card information.

Furthermore, Samsung's proposed construction limits the term to only "purchasing account numbers," which conflict with the specification of the 188 Patent family. For example (and consistent with the plain and ordinary meaning of the term) the specification mentions that a name and address, in addition to credit card numbers, can be useful for transactions.  188 Pat., 6:55-59. Additionally, the specification explains that service blocks of the PDK (accessed via an access key) store "credit card information."  188 Pat., 8:45-49.  Samsung's strictly constrained definition improperly excludes commonly understood aspects of the term that are listed in the specification.

### 5. "Receiver-decoder circuit" (188: 1, 10; 700: 1, 11)

| Proxense's Construction | Samsung's Construction |
|---|---|
| A component or collection of components, capable of wirelessly receiving data in an encrypted format and decoding the encrypted data for processing | A device that provides a wireless interface to the PDK |

Proxense has pointed to examples in the specification indicating an "integrated RDC" need not be a separate and discrete entity. Additionally, Proxense has explained why the drawings do not show an "integrated PDK" as a separate and discrete entity. Proxense also notes that the drawings do include antennas to indicate the wireless exchange of information. Even if it was correct to interpret such a functional representation as depicting the physical location of antennas, it would not justify limiting the claims as Samsung proposes. *See Bridgeport Fittings,* 632 F.3d at 1254.

Samsung continues to emphasize an embodiment having a "direct coupling" between the RDC and PDK. But the claims do not require a direct coupling.  Rather, claim 1 of the 188 Patent and claim 1 of the 700 Patent recite "the integrated RDC coupled to the integrated PDK by a first signal line for communication."  Additionally, claim 10 of the 188 Patent and claim 11 of the 700 Patent do not recite a signal line or coupling between the integrated PDK and integrated RDC. Thus, Samsung is reading limitations from one embodiment in the specification into the claims.

### 6. "Inheritance Information: (188: 9, 18; 700: 9, 19)

| Proxense's Construction | Samsung's Construction |
|---|---|
| Information passed for a first device to a second device for use by the second device | Information that is received form a predecessor device |

Proxense's construction of "inheritance information" comes directly from the specification of the '188 and '700 Patents. Resp. Br. at 22-23. Relying on extrinsic evidence, Samsung proposes a construction in which the first device and second are "limited to a predecessor/successor relationship."  Samsung Reply Br., at 15.  Samsung's definition contradicts the definitions provided in and the uses of the term in the specification.  The Court must favor the definition provided by the Patents over that provided by Samsung's cited dictionaries.  *3M Innovative Props. V. Tredegar Corp.,* 725 F.3d 1315, 1321 (Fed. Cir. 2013) ("Courts may rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.").

### 7.     "Enablement signal" (188: 10-12, 17; 700: 11-13, 18)

| Proxense's Construction | Samsung's Construction |
|---|---|
| A message that enables or authorizes | No construction needed.   Alternatively, a signal that authorizes |

The specification and claims do not limit an "enablement signal" to an authorization signal. With respect to FIG. 14, the specification states that "hybrid device 1102 [will] generate an authorization or enable signal on signal line 1406." 188 Pat., 17:2-3. Moreover FIG. 15 labels item 1506 "enable signal," which the specification refers to as an "authorization signal." 188 Pat. 2:49-52.   Consistent with the foregoing, claim 10 of the 188 Patent and claim 11 of the 700 Patent define an "enablement signal" as "**enabling** one or more of an application, a function, and a service."   The term "enabling" is explicitly defined in the specification as the retrieval of information from a service block of a PDK in exchange for an access key held by the application, function, or service to be enabled and provided to the PDK by an RDC.   188 Pat., 9:4-13. Samsung's attempt to read "enable" out of the word "enablement" finds no support in the intrinsic evidence or otherwise.

## III.    CONCLUSION

For the foregoing reasons, and those previously presented, the Court should adopt Proxense's proposed constructions.

Dated: December 13, 2021                Respectfully submitted,

/s/ David L. Hecht
David L. Hecht (*pro hac vice*) (lead counsel)
Maxim Price (*pro hac vice*)
Conor B. McDonough (*pro hac vice*)
Yi Wen Wu (*pro hac vice*)
dhecht@hechtpartners.com
mprice@hechtpartners.com
cmcdonough@hechtpartners.com
wwu@hechtpartners.com
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
P: (212) 851-6821

*ATTORNEYS FOR PLAINTIFF Proxense, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I, David L. Hecht, hereby certify that on December 13 2021, I served a true and correct copy of the foregoing **PLAINTIFF PROXENSE, LLC's SUR-REPLY CLAIM CONSTRUCTION BRIEF** to counsel of record via ECF.

                                      */s/ David L. Hecht*
                                      David L. Hecht