# EXHIBIT D



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/015,052 | 06/08/2022 | 8352730 | 02198-00080 | 9657 |

142179        7590        08/02/2022
Hard IP LLC (General)
10 Notch Hill Drive
Livingston, NJ 07039

| EXAMINER |
|---|
| TARAE, CATHERINE MICHELLE |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/02/2022 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Quinn Emanuel Urquhart & Sullivan, LLP
Marissa Ducca
1300 I Street NW, Suite 900
Washington, DC 20005

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/015,052* .

PATENT UNDER REEXAMINATION  *8352730* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting Request For Ex Parte Reexamination* | Control No. 90/015,052 | Patent Under Reexamination 8352730 |
|---|---|---|
| | Examiner C. M TARAE | Art Unit 3992 / AIA (FITF) Status No |

***--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

The request for *ex parte* reexamination filed <u>06/08/2022</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:   a)☐ PTO-892,   b)☑ PTO/SB/08,   c)☐ Other: ____

1. ☑  The request for *ex parte* reexamination is GRANTED.

      RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

/CATHERINE M TARAE/
Reexamination Specialist, Art Unit 399

cc:Requester ( if third party requester )

U.S. Patent and Trademark Office
PTOL-471G(Rev. 01-13)                    Office Action in *Ex Parte* Reexamination                    Part of Paper No. 20220714

Application/Control Number: 90/015,052 　　　　　　　　　　　　　　　　　　　　Page 2
Art Unit: 3992

# DECISION ON REQUEST FOR *EX PARTE* REEXAMINATION

The present application is being examined under the pre-AIA first to invent provisions.

A substantial new question (SNQ) of patentability affecting claims 1-17 of U.S. Pat. No. 8,352,730 to Giobbi ("the '730 Patent") is raised by the Request for *Ex Parte* reexamination filed June 8, 2022 ("Request") by Samsung Electronics America, Inc. ("Requestor").

Reexamination is <u>granted</u> for claims 1-17.

### *Prior and Concurrent Proceedings and Litigation*

Examiner notes related *ex parte* reexamination filings: 90/015,053 (decision on Order not yet made) and 90/015,054 (Order granted on July 13, 2022).

Examiner further notes IPR2021-01444, which concluded with a Denial of Institution in which the PTAB indicated Petitioner did not show a reasonable likelihood of prevailing because Petitioner did not show persuasively that the references taught a "third-party trusted authority."

The '730 Patent is also the subject of 6:21cv210, *Proxense, LLC V. Samsung Electronics Co, Ltd Et Al.*, currently open.

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the '730 Patent throughout the course of this reexamination proceeding.  The third party requester is also reminded of the ability to similarly apprise

the Office of any such activity or proceedings throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282, and 2286.

### *References Asserted by PO Requester as Raising SNQs of Patentability*

- U.S. Pat. No. 7,188,110 to Ludtke ("Ludtke" or "Ex. 1005") available as prior art under 35 USC 102(e);

- U.S. Pub. No. 20030196084 to Okereke et al. ("Okereke" or "Ex. 1006") available as prior art under 35 USC 102(a,e);

- U.S. Pub. No. 20030177102 to Robinson ("Robinson" or "Ex. 1007") available as prior art under 35 USC 102(a,e); and

- WO 9956429 A2 to Scott ("Scott" or "Ex. 1008") available as prior art under 35 USC 102(b).

<u>Other</u>

- Declaration of Benjamin F. Goldberg ("Goldberg Dec" or "Ex. 1003").

All of the references and declarations identified in the request have been reviewed and considered.

Application/Control Number: 90/015,052                                                                                            Page 4
Art Unit: 3992

## *Prosecution History of the '730 Patent*

Application 11/314,199 (the '199 Application) that matured into the '730 Patent was originally filed December 20, 2005 with claims 1-21.

A first Non-Final Office Action was mailed April 27, 2009 rejecting claims 15-20 under 35 USC 101 for being directed to non-statutory subject matter. Claims 1, 4-11, 15, and 18 were also rejected under 35 USC 102 as being anticipated by U.S. Pat. No. 6,041,410 to Hsu et al. ("Hsu"). Claims 2, 3, 12-14, 16-17, and 19-21 were also rejected under 35 USC 103 as being unpatentable over Hsu and U.S. Pub. No. 20040129787 to Saito et al. ("Saito").

On July 27, 2009, Applicant responded with amendments to the claims and cancelling claims 4, 6, 11, and 16.

Examiner issued a Final Office Action on November 25, 2009 rejecting claims 1, 2, 5, 7-10, 12, and 19-21 under 35 USC 102 as being anticipated by Hsu. Claims 15 and 18 were also rejected under 35 USC 103 as being unpatentable over Hsu. Claims 3, 13-14, and 17 were rejected under 35 USC 103 as being unpatentable over Hsu and Saito.

Applicant filed a Request for Continued Examination ("RCE") on February 25, 2010 amending the claims and adding new claims 22-25.

Examiner issued a Non-Final Office Action on June 7, 2010 rejecting claims 1, 2, 5, 7-10, 12, 15, and 18-25 under 35 USC 103 as being unpatentable over Hsu and rejecting claims 3, and 13-14 under 35 USC 103 as being unpatentable over Hsu and Saito.

After several more rounds of prosecution and claim amendments, a Notice of Allowance was issued August 31, 2012 allowing claims 1-3, 5, 7-10, 12-15, and 17-21 with the following reasons for allowance:

"The closest prior arts cited are generally directed to various aspects of verifying users during authentication of a device. However, none of the cited arts found alone or in combination suggests or teaches the elements of the independent claims. For instance, no parts of the cited arts teach or suggest limitations in a first embodiment of the invention which verifying a user during authentication of an integrated device, comprising the steps of: persistently storing biometric data of the user and a plurality of codes and other data values comprising a device ID code uniquely identifying the integrated device and a secret decryption value in a tamper proof format written to a storage element on the integrated device that is unable to be subsequently altered; wherein the biometric data is selected from a group consisting of a palm print, a retinal scan, an iris scan, a hand geometry, a facial recognition, a signature recognition and a voice recognition; responsive to receiving a request for a biometric verification of the user, receiving scan data from a biometric scan; comparing the scan data to the biometric data to determine whether the scan data matches the biometric data; responsive to a determination that the scan data matches the biometric data, wirelessly sending one or more codes from the plurality of codes and the other data values for authentication by an agent that is a third-party trusted authority possessing a list of device ID codes uniquely identifying legitimate integrated devices, wherein the one or more codes and other data values includes the device ID code; and responsive to authentication of the one or more codes and the other data values by the agent,

receiving an access message from the agent allowing the user access to an application, wherein the application is selected from a group consisting of a casino machine, a keyless lock, a garage door opener, an ATM machine, a hard drive, computer software, a web site and a file. The cited prior arts also do not teach or suggest limitations in the second embodiment of the invention which authenticating a verified user using a computer processor configured to execute method steps, comprising: receiving one or more codes from a plurality of codes and other data values including a device ID code, wherein the plurality of codes and the other data values comprises the device ID code uniquely identifying the integrated device and a secret decryption value associated with a biometrically verified user, the device ID code being registered with an agent that is a third-party trusted authority possessing a list of device ID codes uniquely identifying legitimate integrated devices; requesting authentication of the one or more codes and the other data values by the agent, wherein the authentication determines whether the one or more codes and the other data values are legitimate; receiving an access message from the agent; and in response to a positive access message, allowing the biometrically verified user access to an application, wherein the application is selected from a group consisting of a casino machine, a keyless lock, a garage door opener, an ATM machine, a hard drive, computer software, a web site and a file."

IPR2021-01444

A petition requesting *inter partes* review was filed August 26, 2021.  IPR2021-01444 concluded with a Denial of Institution in which the PTAB indicated Petitioner did not show a reasonable likelihood of prevailing because Petitioner did not show

persuasively that the references taught a "third-party trusted authority." The petition presented the following references in the grounds of unpatentability: Scott (WO1999056429), Russell (US20040044627), Lapsley (US2001/0000535), Robinson (US2003/0177102), Rhoads (US2004/0153649), Berardi (US7239226), Rosen (US6175921), Shreve (US2002/0109580), and Kinoshita (US2003/0055792).

### *Substantial New Question of Patentability Requirement*

For a substantial new question of patentability (SNQ) to be present, it is only necessary that: (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; and (B) the same question of patentability as to the claim has not been decided by the Office in an earlier concluded examination or review of the patent, raised to or by the Office in a pending reexamination or supplemental examination of the patent, or decided in a final holding of invalidity (after all appeals) by a federal court in a decision on the merits involving the claim. MPEP 2242 I.  Additionally, it must first be demonstrated that a patent or printed publication that is relied upon in a proposed rejection presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application that resulted in the patent for which reexamination is requested, and during the prosecution of any other prior proceeding involving the patent for which reexamination is requested. MPEP 2216.

### Proposed SNQs Raised in the Request

Issue 1:  Ludtke in combination with Okereke renders obvious claims 1-2, 4-9, 11-12, and 14-17.

Issue 2:  Ludtke in combination with Okereke and Robinson renders obvious claims 3, 10, and 13.

Issue 3:  Ludtke in combination with Scott renders obvious claims 1-2, 4-9, 11-12, and 14-17.

Issue 4:  Ludtke in combination with Scott and Robinson renders obvious claims 3, 10, and 13.

### Analysis of SNQs

Issue 1: Proposed SNQ based on Ludtke in combination with Okereke (Request at pp. 45-84)

Ludtke discloses a transaction device, e.g., a privacy card 130, is used to maintain the privacy of the user while enabling the user to perform transactions. The transaction device information is provided to the TPCH 110 that then indicates to the vendor 125 and the user 120 approval of the transaction to be performed. (6:39-44)



FIG. 1

Biometric data such as fingerprint are used to authorize users. (14:33-46) The transaction device contains a unique identifying value along with other information that allows the transaction privacy clearinghouse to track its use and assist in user transactions. The transaction devices themselves have an identity so that a user's true identity and direct contact information are not known to vendors. (6:21-35) The transaction privacy clearing house maintains a secure database of transaction device information and user information. (6:49-51)

Okereke discloses a secure wireless communications system that uses a session key to encrypt credential information. (¶¶25-26)

Accordingly, it appears Ludtke in combination with Okereke disclose the technological teachings that are deemed important to a reasonable examiner in determining the patentability of claim 1.

Ludtke and Okereke were not previously cited in the prosecution history of the '730 Patent; and the issues are not the subject of a final holding by a Federal Court.

| | |
|---|---|
| Application/Control Number: 90/015,052 | Page 10 |
| Art Unit: 3992 | |

The teachings are also not cumulative to the teachings previously residing in the prior art cited by the '730 Patent.  <u>Therefore, the Examiner agrees that Ludtke in combination with Okereke raise a SNQ of patentability with respect to claim 1</u>.

<u>Issue 2: Proposed SNQ based on Ludtke in combination with Okereke and Robinson (Request at pp. 85-88)</u>

Ludtke and Okereke were discussed above with regard to Issue 1.

Robinson discusses a system for biometric authorization for age verification.  A central database holds information related to users to authenticate a user's age to access an age restricted area, for example. (¶¶27-29)

Accordingly, it appears Ludtke in combination with Okereke and Robinson disclose the technological teachings that are deemed important to a reasonable examiner in determining the patentability of claim 3.

Robinson was not previously cited in the prosecution history of the '730 Patent; and the issues are not the subject of a final holding by a Federal Court.  While Robinson was cited in the previous IPR, the IPR was denied institution, so a final written decision was not made using Robinson.  The teachings are also not cumulative to the teachings previously residing in the prior art cited by the '730 Patent.  <u>Therefore, the Examiner agrees that Ludtke in combination with Okereke and Robinson raise a SNQ of patentability with respect to claim 3</u>.

Issue 3: Proposed SNQ based on Ludtke in combination with Scott (Request at pp. 88-108)

Ludtke was discussed above with regard to Issue 1.

Scott discloses a personal identification system for allowing access to secure facilities. A personal identification device (PID) includes a biometric sensor for capturing a biometric trait of a user that is unique to the user. The captured biometric trait is compared with stored biometric data. If there is a match, the user is identified as enrolled (i.e., authorized to access the secure facility). (1:4-14) An ID code is used to uniquely identify a person or a device. The ID code can be stored in the memory of the PID. (4:3-5; 11:6-16). The PID uses an encryption algorithm and public/private key pairs that are stored in memory for encryption. (11:24-30; 12:8-13)

Accordingly, it appears Ludtke in combination with Scott discloses the technological teachings that are deemed important to a reasonable examiner in determining the patentability of claim 1.

Scott was not previously cited in the prosecution history of the '730 Patent; and the issues are not the subject of a final holding by a Federal Court. While Scott was cited in the previous IPR, the IPR was denied institution, so a final written decision was not made using Scott. The teachings are also not cumulative to the teachings previously residing in the prior art cited by the '730 Patent. Therefore, the Examiner agrees that Ludtke in combination with Scott raises a SNQ of patentability with respect to claim 1.

Issue 4: Proposed SNQ based on Ludtke in combination with Scott and Robinson (Request at pp. 109-111)

Ludtke, Scott and Robinson were discussed above with regard to Issues 1-3.

Since Ludtke in combination with Scott are considered to raise an SNQ, Ludtke in combination with Scott and Robinson would also be considered as raising an SNQ.

Accordingly, it appears Ludtke, Scott and Robinson disclose the technological teachings that are deemed important to a reasonable examiner in determining the patentability of claim 3.

Ludtke, Scott and Robinson were not previously cited in the prosecution history of the '730 Patent; and the issues are not the subject of a final holding by a Federal Court. The teachings are also not cumulative to the teachings previously residing in the prior art cited by the '730 Patent. <u>Therefore, the Examiner agrees that Ludtke, Scott and Robinson raise a SNQ of patentability with respect to claim 3.</u>

### *35 USC 325(d)*

A review of the post grant history of the '730 patent indicates that that the patent was the subject of the single AIA petition (IPR2021-01444). On August 26, 2021, Petitioner, Samsung Electronics America, Inc., filed a petition for *inter partes* review, asserting the following grounds raised a reasonable likelihood in prevailing (RLP) in showing that the claims 1-11 were unpatentable. The petition asserted the following grounds:

| Claim(s) Challenged | 35 U.S.C. § | References Basis |
|---|---|---|
| 1, 2, 4-9, 11 | 103(a) | Scott, Russell, Lapsley |
| 3, 10 | 103(a) | Scott, Russell, Lapsley, Robinson |
| 6 | 103(a) | Scott, Russell, Lapsley, Rhoads |
| 1, 2, 4-6, 8, 9, 11 | 103(a) | Berardi, Rosen, Shreve, Kinoshita |

On February 28, 2022, the Board issued a decision declining to institute *inter partes* review of the '730 patent holding that the petition failed to raise an RLP, because the petition did not show persuasively that the references taught the claimed limitation of a "third-party trusted authority."

A comparison between the instant request for *ex parte* reexamination of the '730 patent indicates that the request is <u>not</u> based on substantially the same prior art or arguments as the prior IPR petition. While the reexamination request also cites Scott and Robinson which were cited in the prior AIA petition, each of the asserted grounds in the request cites these references as secondary references with the newly cited Ludtke reference as a primary reference specifically to address the omission identified as the basis for the Board's refusal to institute IPR2021-01444. As pointed out by third party requester Ludtke discloses a transaction processing [or privacy] clearing house (TCPH) which is a third party trusted authority, and further discloses that the TPCH "may access relevant account information to authorize transactions." Col. 3:40-45. Additionally, Figure 1 of Ludtke shows how the TPCH is a third party. The teachings in Lutke and arguments related to Lutke were not present in the prior AIA petition. Accordingly, the prior art and arguments provided in the request are not the same or substantially the same as those presented IPR2021-01444.

In view of the facts above, particularly the fact that the instant reexamination request is not based on substantially the same prior art or arguments as those presented to the Office in the petition in IPR2021-01444 and the fact the third party requester has not engaged serial challenges '730 patent, other than a single prior IPR petition, a discretionary denial pursuant to 35 USC 325(d) is not implicated.

Accordingly, *ex parte* reexamination is Ordered in view of the holdings above that the prior art raises a substantial new question of patentability to the '730 patent.

### *Conclusion*

Since an SNQ has been raised for at least one claim, the Request for *Ex Parte* reexamination of claims 1-17 is <u>granted</u>.

### *Extension of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Amendment in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be

formally presented pursuant to 37 CFR §1.52(a) and (b), and must contain any fees required by 37 CFR § 1.20(c).  See MPEP §2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

## Service of Papers

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parities where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248.  See 37 CFR 1.550.

## Future Correspondence

If attempts to reach Examiner Michelle Tarae by telephone at 571-272-6727 are unsuccessful, the examiner's supervisor, Andrew Fischer, can be reached on 571-272-6779.

All correspondence relating to this ex parte reexamination proceeding should be directed:   By Mail to:

    Mail Stop Ex Parte Reexam
    Central Reexamination Unit
    Commissioner of Patents
    United States Patent & Trademark Office
    P.O. Box 1450
    Alexandria, VA 22313-1450

   By FAX to:

(571) 273-9900
Central Reexamination Unit

By Hand:

Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Registered users of EFS-Web may alternatively submit such correspondence via the electronic filing system EFS-Web, at

https://efs.uspto.gov/efile/myportal/efs-registered

EFS-Web offers the benefit of quick submission to the particular area of the Office that needs to act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically uploaded) directly into the official file for the reexamination proceeding, which offers parties the opportunity to review the content of their submissions after the "soft scanning" process is complete.

Any inquiry concerning this communication should be directed to the Central Reexamination Unit at (571) 272-7705.

Signed:

/CATHERINE M TARAE/
Reexamination Specialist, Art Unit 3992



Conferees:


/RSD/


/ALEXANDER J KOSOWSKI/
Supervisory Patent Examiner, Art Unit 3992