# EXHIBIT E



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/015,053 | 06/08/2022 | 9298905 | 2090-0002-REX | 7424 |

| 142179 | 7590 | 08/02/2022 |
|---|---|---|

Hard IP LLC (General)
10 Notch Hill Drive
Livingston, NJ 07039

| EXAMINER |
|---|
| RIMELL, SAMUEL G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/02/2022 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Marissa Ducca
Quinn Emanuel Urquhart & Sullivan
1300 I Street, Suite 900
Washington, DC 20005

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/015,053* .

PATENT UNDER REEXAMINATION *9298905* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting Request For Ex Parte Reexamination* | Control No. 90/015,053 | Patent Under Reexamination 9298905 |
|---|---|---|
| | Examiner SAM RIMELL | Art Unit 3992 / AIA (FITF) Status No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed 06/08/2022 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:   a)☐  PTO-892,     b)☑  PTO/SB/08,     c)☐  Other: ____

1. ☑  The request for *ex parte* reexamination is GRANTED.

      RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

cc:Requester ( if third party requester )

U.S. Patent and Trademark Office
PTOL-471G(Rev. 01-13)    Office Action in *Ex Parte* Reexamination    Part of Paper No. 20220728

Application/Control Number: 90/015,053　　　　　　　　　　　　　　　　　　　　　　　Page 2
Art Unit: 3992

## DECISION GRANTING EX PARTE REEXAMINATION

The Request filed June 8, 2022 alleges that substantial questions of patentability (SNQ) affecting claims 1-18 of the U.S. Patent Number 9,298,905 are raised by the following prior art references:

Prior Art

| | | |
|---|---|---|
| Ex. 1005 | U.S. Patent No. 7,188,110 ("Ludtke") |
| Ex. 1006 | U.S. Patent Publication No. 2003/0196084 ("Okereke") |
| Ex. 1007 | U.S. Patent Publication No. 2003/0177102 ("Robinson") |
| Ex. 1008 | International Publication Number WO 99/56429 ("Scott") |

### *Brief Overview of US Patent 9,298,905*

The invention pertains to systems and methods verifying a user during authentication of an integrated device. In one embodiment, the system includes an integrated device and an authentication unit. The integrated device stores biometric data of a user and a plurality of codes and other data values comprising a device ID code uniquely identifying the integrated device and a secret decryption value in a tamper proof format, and when scan data is verified by comparing the scan data to the biometric data, wirelessly sends one or more codes and other data values including the device ID code. The authentication unit receives and sends the one or more codes and the other data values to an agent for authentication, and receives an access message from the agent indicating that the agent successfully authenticated the one or more codes and other data values and allows the user to access an application.

### *Prosecution History of US Patent 9,298,905*

US Patent 9,298,905 resulted from the filing of US application 14/521,982 filed October 23, 2014, with a priority claim extending to provisional application 60/637,538 filed December 20, 2004.

The USPTO mailed a non-final office action on June 12, 2015. Claims 11 and 15 were rejected under the provisions of non-statutory double patenting. Claims 2-10 were rejected under 35 USC §101. Claims 2-10 were rejected under 35 USC §103 in view of Hsu et al (US Patent 6,041,410) and Stanko (US provisional application 2005/0074126). Claims 3 and 13 were rejected under 35 USC §103 in view of Hsu et al (US Patent 6,041,410) and Stanko (US provisional application 2005/0074126) and Schlotterbeck (US Pre-Grant Publication 2004/0128162). Claims 11-12 and 14-18 were rejected under 35 USC §103 in view of Hsu et al (US Patent 6,041,410) and Stanko (US provisional application 2005/0074126) and Lake (US Pre-Grant publication 2002/0091646).

On September 14, 2015, applicant submitted aa reply with amendments and remarks.

On December 16, 2015, the USPTO issued a Notice of Allowance with claims 2-7 and 9-20 allowed and claims 1 and 8 cancelled. These were subsequently re-numbered as claims 1-18.

The reasons for patentability read as follows:

"The closest prior arts cited are generally directed to various aspects of authenticating users using biometric information. However, none of the cited arts found alone or in combination suggests or teaches all the elements of the independent claims. For instance, no parts of the cited arts teach or suggest limitations such as persistently storing biometric data of a legitimate user and an ID code on an integrated device; responsive to receiving a request for a biometric verification of a user, receiving, from a biometric sensor, scan data from a biometric scan performed by the biometric sensor; comparing the scan data to the biometric data to determine whether the scan data matches the biometric data; responsive to a determination that the scan data matches the biometric data, wirelessly sending the ID code for comparison by a third- party

trusted authority against one or more previously registered ID codes maintained by the third-party trusted authority; and responsive to receiving an access message from the third-party trusted authority indicating that the third-party trusted authority successfully authenticated the user as the legitimate user based on the comparison of the ID code, allowing the user to complete a financial transaction. Therefore, the claims are allowable for the above reason."

### *Inter Partes Review before Patent Trial and Appeal Board*

The records of the Patent Trial and Appeal Board contain the following *Inter Partes Review* Proceedings involving claims of US Patent 9,298,905:

| AIA Review # | Filing Date | Institution Decision Date | Petitioner App # | Petitioner Patent # | Petitioner Tech Center | Petitioner | PO/Respondent App # | PO/Respondent Patent # | PO/Respondent Tech Center | PO/Respondent | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| IPR2021-01447 | 08/26/2021 | 02/28/2022 | | | | SAMSUNG ELECTRONICS AMERICA, INC | 14521982 | 9298905 | 2400 | Proxense, LLC | Institution Denied |

### *Final Decisions in the Federal Circuit*

There are no known final decisions in the Federal Circuit involving US Patent 9,298,905.

### *Applicability of "Old Art" in Reexamination Proceedings*

In the examining stage of a reexamination proceeding, the examiner will consider whether the claims are subject to rejection based on art. Before making such a rejection, the examiner should check the patent's file history to ascertain whether the art that will provide the basis for the rejection was previously cited/considered in an earlier concluded Office examination of the patent (e.g., in the examination of the application for the patent). For the sake of expediency, such art is referred to as "old art" throughout, since the term "old art" was coined by the Federal Circuit in its decision of *In re Hiniker*, 150 F.3d 1362, 1365-66, 47 USPQ2d 1523, 1526 (Fed. Cir. 1998).

If the rejection to be made by the examiner will be based on a combination of "old art" and art newly cited during the reexamination proceeding, the rejection is proper, and should be made.

Application/Control Number: 90/015,053 Page 5
Art Unit: 3992

See *In re Hiniker*, 150 F.3d at 1367, 47 USPQ2d at 1527. (Court held the reexamination proceeding was supported by a substantial new question of patentability where the rejection before the court was based on a combination of art that had been before the examiner during the original prosecution, and art newly cited during the reexamination proceeding.)

For a reexamination that was ordered on or after November 2, 2002 (the date of enactment of Public Law 107-273; see Section 13105, of the Patent and Trademark Office Authorization Act of 2002), reliance solely on old art (as the basis for a rejection) does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation presented in the request.

### Discussion of SNQs

### Issue #1

Requester proposes that Ludtke in view of Okereke raise a substantial new question of patentability (SNQ) with respect to claims 1, 3-10 and 12-18. From this claim set, claims 1, 9, and 13 are the independent claims.

Independent claim 1 recites:

"*receiving, from a biometric sensor, scan data from a biometric scan performed by the biometric sensor; comparing the scan data to the biometric data to determine whether the scan data matches the biometric data; responsive to a determination that the scan data matches the*

*biometric data, wirelessly sending the ID code for comparison by a third-party trusted authority against one or more previously registered ID codes"*

Ludtke at col. 4, line 66 through col. 5, line 1, states "Alternately, authentication may be achieved by using more sophisticated technologies such as a biometric solution (e.g. fingerprint recognition)". This generally corresponds to *"receiving, from a biometric sensor, scan data from a biometric scan performed by the biometric sensor"*. Ludtke at col. 14, lines 33-36 recite: "The user authentication block 777 preferably includes a biometric solution of validating that the user interacting with the device is an authorized user. This can be achieved, for example, by using a fingerprint recognition pad." Ludtke at col. 14, lines 40-46 further recite: "At various times during interaction, the user is prompted to supply a fingerprint recognition sample. This block captures the sample, and carries out a recognition algorithm against the authorized samples that are stored in the user identity block described above. If a match is found, the user is authorized to access the data and functionality of the device." These features generally correspond to *"comparing the scan data to the biometric data to determine whether the scan data matches the biometric data"*. Ludtke at FIG 31 illustrates the financial transaction process where steps 3104, 3106 and 3110 involve processing of the user's fingerprint. A match of the user's fingerprint at step 3106 then subsequently leads to a selection of codes at step 3108. In FIG 32 at step 3256, the code input is verified to grant access to the dialing of a telephone call. Ludtke at col. 15, lines 7-12 indicate that data input functions can be performed wirelessly. This generally corresponds to *"wirelessly sending the ID code for comparison by a third-party trusted authority against one or more previously registered ID codes"*

Independent claim 9 recites:

"*a validation module, coupled to communicate with the persistent storage media, that receives scan data from a biometric scan for comparison against the biometric data, and that sends the ID code for comparison by a third-party trusted authority against one or more previously registered ID codes maintained by the third-party trusted authority*"

Ludtke at FIG 7C teaches a user authentication module 777 which is integrated with persistent memory storage, as illustrated by the memory/info stick of FIG 9B. This generally corresponds to "*a validation module, coupled to communicate with the persistent storage media*". Ludtke at col. 14, lines 33-36 recite: "The user authentication block 777 preferably includes a biometric solution of validating that the user interacting with the device is an authorized user. This can be achieved, for example, by using a fingerprint recognition pad." Ludtke at col. 14, lines 40-46 further recite: "At various times during interaction, the user is prompted to supply a fingerprint recognition sample. This block captures the sample, and carries out a recognition algorithm against the authorized samples that are stored in the user identity block described above. If a match is found, the user is authorized to access the data and functionality of the device." These features generally correspond to "*receives scan data from a biometric scan for comparison against the biometric data*". Ludtke at FIG 31 illustrates the financial transaction process where steps 3104, 3106 and 3110 involve processing of the user's fingerprint. A match of the user's fingerprint at step 3106 then subsequently leads to a selection of codes at step 3108. In FIG 32 at step 3256, the code input is verified externally to grant access to the dialing of a telephone call. This generally corresponds to *sends the ID code for comparison by a third-party trusted authority against one or more previously registered ID codes maintained by the third-party trusted authority*".

Application/Control Number: 90/015,053 Page 8
Art Unit: 3992

Independent claim 13 recites:

"*an integrated hardware device that persistently stores biometric data of a legitimate user and an ID code in the integrated hardware device, and that wirelessly sends the—ID code; an authentication circuit that receives the ED code and sends the ID code to a third-party trusted authority for authentication, and that receives an access message from the third-party trusted authority indicating that the third-party trusted authority successfully authenticated the ID code*".

Ludtke at FIG 7C teaches hardware component 777 which is integrated with persistent memory storage, as illustrated by the memory/info stick of FIG 9B. This generally corresponds to "*an integrated hardware device that persistently stores biometric data of a legitimate user*". Ludtke at FIG 7B also teaches a smart chip interface, which generally correspond to "*an ID code in the integrated hardware device*". Ludtke at col. 15, lines 7-12 indicate that data input functions can be performed wirelessly. This generally corresponds to "*wirelessly sending the ID code*".

Ludtke at col. 14, lines 40-46 further recite: "At various times during interaction, the user is prompted to supply a fingerprint recognition sample. This block captures the sample, and carries out a recognition algorithm against the authorized samples that are stored in the user identity block described above. If a match is found, the user is authorized to access the data and functionality of the device." These features generally correspond to "*an authentication circuit that receives the ED code*".

Ludtke at FIG 31 illustrates the financial transaction process where steps 3104, 3106 and 3110 involve processing of the user's fingerprint. A match of the user's fingerprint at step 3106 then subsequently leads to a selection of codes at step 3108. In FIG 32 at step 3256, the code input is verified externally. The dial tone provided to the user becomes an access message so as to  to grant access to the dialing of a telephone call. This generally corresponds to "*sends the ID code to*

*a third-party trusted authority for authentication, and that receives an access message from the third-party trusted authority indicating that the third-party trusted authority successfully authenticated the ID code"*.

There is a substantial likelihood that a reasonable examiner would consider these teachings of Ludtke important in deciding the patentability of independent claims 1, 9, and 13. The reference to Ludtke is not cumulative to the prior art of record in the original file and the claim was not subject to a final holding of invalidity by a federal court. Accordingly, Ludtke raises a substantial new question of patentability with respect to claims 1, 9 and 13.

Since dependent claims 3-8, 10, 12 and 14-18 would incorporate the language of the independent claims by reference, the reference to Ludtke would equally raise a substantial new question of patentability with respect to the dependent claims 3-8, 10, 12 and 14-18.

A combination of prior art including the Ludtke reference, such as Ludtke and Okereke would further raise a substantial new question of patentability with respect to claims 1, 3-10 and 12-18, since the combination would at least include the teachings of Ludtke.

### Issue #2

Requester proposes that Ludtke in view of Okereke and Robinson raise a substantial new question of patentability (SNQ) with respect to dependent claims 2 and 11.

Ludtke was established in Issue #1 as raising an SNQ with respect to all of the independent claims 1, 9 and 13. Since dependent claims 2 and 11 would incorporate the language of the independent claims by reference, the reference to Ludtke would equally raise a substantial new question of patentability with respect to the dependent claims 2 and 11.

A combination of prior art including the Ludtke reference, such as Ludtke in view of Okereke and Robinson, would further raise a substantial new question of patentability with respect to claims 2 and 11, since the combination would at least include the teachings of Ludtke.

### Issue #3

Requester proposes that Ludtke in view of Scott raise a substantial new question of patentability (SNQ) with respect to claims 1, 3-10 and 12-18.

Ludtke was established in Issue #1 as raising an SNQ with respect to all of the independent claims 1, 9 and 13. Since dependent claims 3-8, 10, 12 and 14-18 would incorporate the language of the independent claims by reference, the reference to Ludtke would equally raise a substantial new question of patentability with respect to the dependent claims 3-8, 10, 12 and 14-18.

A combination of prior art including the Ludtke reference, such as Ludtke in view of Scott, would further raise a substantial new question of patentability with respect to claims1 , 3-10 and 12-18 since the combination would at least include the teachings of Ludtke.

### Issue #4

Requester proposes that Ludtke in view of Scott and Robinson raise a substantial new question of patentability (SNQ) with respect to dependent claims 2 and 11.

Ludtke was established in Issue #1 as raising an SNQ with respect to all of the independent claims 1, 9 and 13. Since dependent claims 2 and 11 would incorporate the language of the independent claims by reference, the reference to Ludtke would equally raise a substantial new question of patentability with respect to the dependent claims 2 and 11.

A combination of prior art including the Ludtke reference, such as Ludtke in view of Scott and Robinson, would further raise a substantial new question of patentability with respect to claims 2 and 11, since the combination would at least include the teachings of Ludtke.

## Summary of Findings

| Issues | References | Substantial New Question of Patentability with respect to claims of US Patent 6,212,662 |
|---|---|---|
| #1 | Ludtke, Okereke | Claims 1, 3-10, 12-18: Yes |
| #2 | Ludtke, Okereke, Robinson | Claims 2, 11: Yes |
| #3 | Ludtke, Scott | Claims 1, 3-10, 12-18 : Yes |
| #4 | Ludtke, Scott, Robinson | Claim 2, 11: Yes |

## 35 USC 325(d)

A review of the post grant history for the '905 Patent indicates that a single AIA post grant challenge has been filed. On August 26, 2021, SAMSUNG ELECTRONICS AMERICA, INC. filed a petition for *inter partes* review (IPR2021-01447) asserting a reasonable likelihood in prevailing (RLP) in showing the unpatentability of claims 1-12 of the '905 Patent. The petition asserted that claims 1-9 were unpatentable under 103(a) over Scott and Lapsley (Ground #1), unpatentable under 103(a) over Scott, Lapsley and Robinson (Ground #2) and unpatentable under 103(a) over Berardi, Shreve and Kinoshita (Ground #3). On February, 28, 2022, the Board issued a decision denying the petition as not raising an RLP to any of the challenged claims.

In the Board's decision refusion to institute *inter partes* review, regarding Grounds #1 and #2, the Board held that "Petitioner does not show persuasively that either Scott or Lapsley teaches a "third-party trusted authority," as recited in claim 1… or that (IPR2021-01447, pages 25 and 26). Regarding Ground #3, the Board held that "we cannot discern Petitioner's allegations of obviousness based on Berardi, Shreve, and Kinoshita, nor can we say Patent Owner is on

notice of those allegations (IPR202-10447 pages 30). Thus, the Board that the petition failed to raise an RLP for any of three asserted grounds in the petition.

A review of the AIA petition as compared to the instant request for *ex parte* reexamination indicates both the Scott and Robinson prior art references that were presented in the prior AIA petition are also being presented in the instant reexamination request also filed by Samsung (See SNQs #2, #3 and #4). However even though Scott was used in the prior AIA petition, they are now being used as a part of a different grounds of rejection as secondary references with the newly presented Luedtke as a primary reference (See proposed SNQ #2 #3 and #4). Further, the request specifically presents newly cited Ludtke to address the omission identified as the basis for the Board's refusal to institute in IPR2021-01447. As pointed out by third party requester, Ludtke specifically discloses a transaction processing [or privacy] clearing house (TCPH) which is a third-party trusted authority, and further discloses that the TPCH "may access relevant account information to authorize transactions." See Col. 3:40-45. Thus, the teachings cited to in Lutke and arguments related to Lutke presented in the instant reexamination request were not present in the prior AIA petition and relate to limitations the Board held was not present in Scott. Accordingly, the prior art and arguments provided in the request are not the same or substantially the same as those presented IPR2021-01447.

Accordingly, in view of the above facts, particularly the fact that the request is not based on substantially the same prior art or arguments, a discretionary denial of reexamination pursuant to 35 USC 325(d) is not implicated and reexamination will be Ordered for the reasons set forth above.

## Service of Papers

After filing of a request for ex parte reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. The document must reflect service or the document may be refused consideration by the Office. See 37 CFR 1.550(f).

## Extensions of Time

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

## Litigation Reminder

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving US Patent 9,298,905 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed as follows:

By **U.S. Postal Service Mail** to:

    Mail Stop *Ex Parte* Reexam
    ATTN: Central Reexamination Unit
    Commissioner for Patents

P.O. Box 1450
Alexandria, VA  22313-1450


By FAX to:        (571) 273-9900
                  Central Reexamination Unit

By hand to:       Customer Service Window
                  Randolph Building
                  401 Dulany St.
                  Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.


/SAMUEL G RIMELL/
Primary Examiner, Art Unit 3992

Conferees:

/JDC/ Jeff Carlson
Primary Examiner, Art Unit 3992


/MICHAEL FUELLING/
Supervisory Patent Examiner, Art Unit 3992