## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

PROXENSE, LLC,

*Plaintiff*,

v.

SAMSUNG ELECTRONICS, CO., LTD. and
SAMSUNG ELECTRONICS AMERICA, INC,

Defendants.

Civil Action No.  6:21-CV-00210-ADA

**JURY TRIAL REQUESTED**

**REDACTED VERSION OF
DOCUMENT FILED UNDER SEAL**

## PLAINTIFF PROXENSE, LLC'S BRIEF IN OPPOSITON TO
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## <u>**TABLE OF CONTENTS**</u>

I.    ARGUMENT ................................................................................................................ 1

    A.    A Material Issue of Fact Exists As to Whether the Samsung Pay "Stub App" Directly and Indirectly Infringes the Asserted Apparatus Claims ........................... 1

           1.    Accused Devices with the Samsung Pay "Stub App" Directly Infringe ......... 1

           2.    Samsung Induces Infringement of Products with the "Stub App" .................. 7

    B.    Samsung is Not Entitled to Summary Judgment on the Basis of Divided Infringement ......................................................................................................... 8

           1.    TSPs are Not Required for Performance of any Asserted Method Claims ..... 9

           2.    Samsung controls the TSPs and has Formed a Joint Enterprise with Them . 12

    C.    Samsung is Not Entitled to Summary Judgment Limiting Damages for Method Claims ................................................................................................................. 17

           1.    Samsung's Motion is Premature ................................................................... 17

           2.    Disputed Factual Issues as to the Damages Base Preclude Summary Judgment ...................................................................................................... 18

           3.    Samsung Seeks A Remedy at Odds with Accepted Damages Analysis ........ 19

    D.    Samsung Cannot Argue that there are Differences Between Software Versions ................................................................................................ 22

II.    CONCLUSION ........................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Software Design Corp. v. Fiserv, Inc.*,
　641 F.3d 1368 (Fed. Cir. 2011) ........................................................................... 11

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
　797 F.3d 1020 (Fed. Cir. 2015) ........................................................................... 15

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
　681 F.3d 1323 (Fed. Cir. 2012) ............................................................................. 6

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
　576 F.3d 1348 (Fed. Cir. 2009) ..................................................................... 17, 19

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
　287 F.3d 1108 (Fed. Cir. 2002) ............................................................................. 5

*Finjan, Inc. v. Secure Computing Corp.*,
　626 F.3d 1197 (Fed. Cir. 2010) ............................................................................. 2

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*,
　318 F. Supp. 1116 (S.D.N.Y.1970) .................................................... 17, 20, 21, 22

*In re: Google LLC*,
　949 F.3d 1338 (Fed. Cir. 2020) ........................................................................... 12

*Hanson v. Alpine Valley Ski Area, Inc.*,
　718 F.2d 1075 (Fed. Cir. 1983) ........................................................................... 20

*Liquid Dynamics Corp. v. Vaughan Co.*,
　449 F.3d 1209 (Fed. Cir. 2006) ........................................................................... 18

*Lucent Techs., Inc. v. Gateway, Inc.*,
　580 F.3d 1301 (Fed. Cir. 2009) ..................................................................... 19, 20

*Nalco Co. v. Chem-Mod, LLC*,
　883 F.3d 1337 (Fed. Cir. 2018) ........................................................................... 10

*NetworkCom., Inc. v. Microsoft Corp.*,
　422 F.3d 1353 (Fed. Cir. 2005) ............................................................................. 6

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
　30 F.4th 1339 (Fed. Cir. 2022) ........................................................................... 19

*NVT SPE LLC v. Int'l Trade Comm'n,*
  46 F.4th 1361 (Fed. Cir. 2022) ...................................................................... 1, 8, 11

*ResQNet.com, Inc. v. Lansa, Inc.,*
  594 F.3d 860 (Fed. Cir. 2010) ...................................................................... 19, 20

*Silicon Graphics, Inc. v. ATI Techs., Inc.,*
  607 F.3d 784 (Fed. Cir. 2010) ............................................................................ 5

*Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.,*
  760 F. App'x 977 (Fed. Cir. 2019) ................................................................... 20

*Travel Sentry, Inc. v. Tropp,*
  877 F.3d 1370 (Fed. Cir. 2017) ..................................................................... 12, 15

*Uniloc USA, Inc. v. Microsoft Corp.,*
  632 F.3d 1292 (Fed. Cir. 2011) ........................................................................ 11

*Wealthmark Advisors Inc. v. Phoenix Life Ins. Co.,*
  No. SA16CA00485FBESC, 2017 WL 1133506 (W.D. Tex. Mar. 24, 2017) ........................ 15

iii

Proxense respectfully submits this brief in opposition to Defendants' ("Samsung's") motion for partial summary judgment. *See* Samsung's Motions for Partial Summary Judgment, Dkt. No. 94 ("Samsung's SJ Mot." or "Mot."). Samsung's Motion should be denied on all of the grounds raised therein. Samsung's legal contentions are unsupported by law, and genuine disputes of material fact remain as to each issue for summary judgment that Samsung has raised.

I.   **ARGUMENT**

A.   **A Material Issue of Fact Exists As to Whether the Samsung Pay "Stub App" Directly and Indirectly Infringes the Asserted Apparatus Claims**

1.   **Accused Devices with the Samsung Pay "Stub App" Directly Infringe**

The apparatus claims in dispute require devices that are "capable of" certain functionalities, and not their actual performance. Based only on the absence of "for performing" type claim language and the use of the simple-present tense, Samsung argues the apparatus claims require actual performance. Mot. at 11-12. This argument, however, was rejected by the Federal Circuit. *See NVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1373-74 (Fed. Cir. 2022). The court found that "based on just claim language, we see very little significance in the difference between a limitation that might recite 'a data obtaining section for demodulating and decoding' (Finjan-style) and one that recites 'a data obtaining section that demodulates and decodes' (the actual '439 claim language), for determining on which side of the capability/actual-operation line the claims fall." *Id.* (internal citation omitted). The present apparatus claims are directed to computer implemented inventions comprising software components programmed to perform specific steps and, consistent with Federal Circuit precedent, should not be construed to require actual operation.[1]

---

[1] *NVT SPE LLC v. Int'l Trade Comm'n, 46 F.4th 1361, 1372-73 (Fed. Cir. 2022)* ("[T]he recited operative steps a computer- or software-based device undertakes is what defines what a computer-

The claim language at-issue is clearly directed to the capabilities of the device. These capabilities are on the accused devices when they are sold. Samsung uses the '730 patent, claim 8 as its representative example and points to the present tense words "stores" and "receives" as an indication that the claim is directed to performance. Mot. at 11-12. But the language of the claim is directed to the capabilities of the device as follows: (1) "a memory" which stores certain data; (2) "a verification unit" which, "in communication with the memory," receives certain data; and (3) "a radio frequency communicator" that receives a certain message. '730 patent, 10:3-29. Samsung does not argue that the "stub app" installs that memory, verification unit, or the radio frequency communicator. And whether the Samsung Pay "full" app or "stub app" is installed, each and every element of the asserted claims are met. Thus, as in *Finjan*, the asserted apparatus claims are directed to capability. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204–05 (Fed. Cir. 2010) ("The storage medium claims similarly *cover capability*. [The] patent recites a 'computer-readable storage medium storing program code for causing a server … to perform the steps of: receiving ...; comparing ...; and preventing execution....' This language *does not require that the program code be 'active,'* only that it be written 'for causing' a server [] or a computer [] to perform certain steps.") (emphasis added).

Dr. Rubin's report is replete with details of how the recited capabilities in claim 8 are provided on the accused devices.[2]  Regardless of whether they are initially loaded with the "stub

implemented invention is.  We have frequently construed functional language as not requiring actual performance of those operative steps for infringement purposes.")

2

app" or the "full" Samsung Pay app, all of the accused devices come pre-installed with the Samsung Pay Framework, Samsung Knox, the trusted execution environment, Android OS, and the means to begin using Samsung Pay. *See* Ex. F, Expert Report of Avi Rubin, ¶¶ 332, 333. Samsung relies entirely on the mere *presence* of the "stub app," for which Samsung's expert Dr. Nielson was not even asked to inspect the downloadable functionality. And Samsung provides no evidence refuting Dr. Rubin's opinions nor showing that the "stub app" downloads anything other than the user interface elements of Samsung Pay. *Id.*, Dr. Rubin Depo. Tr. 220:24-221:13.[3] Samsung has failed to present any undisputed material facts that would show otherwise.

The Samsung Pay framework exists on the accused devices when they are sold. Samsung's argument that the Samsung Pay application only has two states—the "stub app" and the "full" app—is wrong. Testimony from Samsung's engineers, Samsung's own documentation, and an examination of the accused phones demonstrates this falsehood. Samsung Pay consists of two applications, a user interface and a framework app;

_____

[3] Samsung made additional code available for review on October 25, 2022 and thus, at the very least, the Motion is premature. *See* Ex. N, Oct. 24 Email from K. Hardy; Ex. A, Dr. Rubin Depo. Tr., 223:3-11.



Ex. C, Allen Kim Depo. Tr, 66:6-14. Samsung's representatives' testimony is confirmed by Samsung's publicly available online instructions, which state that "if you have a supported device, you should have Samsung Pay or Samsung Wallet already installed on your phone". Ex. D, (Exhibit 5 to Kim Depo).

Samsung's expert does not refute this. Though Samsung's expert evaluated a "stub app," when asked how it treated the Samsung Pay Framework versus the Samsung Pay user interface, he testified:



Ex. E, Seth Nielson Depo Tr., 189:24–190:18 (emphasis added). Dr. Nielson thus never examined what the stub app downloaded and what is present on the accused devices. Samsung, therefore, has not presented any evidence disputing that the phones are imported and sold with at least the "stub app" and the Samsung Pay Framework app. At the very least this remains a genuine dispute.

Moreover, the "stub app," by definition, provides all of the capabilities and functionality of Samsung Pay to the accused devices. Even assuming Samsung is correct that devices with the "stub app" need to download the infringing features (it is not), the sole purpose of the Samsung Pay stub app is to download and install Samsung Pay. Ex. F, Expert Report of Avi Rubin, ¶ 940;

4

Ex. A, Dr. Rubin Depo. Tr., 220:2-23; Ex. E, Neilson Depo. Tr., 206:5- ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮  In fact, the icon a user taps on to launch the "full" app is the ***exact
same icon, in the exact same location*** of a user's screen. Samsung installs the "stub app." ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮  From the user's perspective, whether a "stub app" or a "full" app is on the device, the
user participates only by using an app identically labeled "Samsung Pay."

Samsung's caselaw in support of its argument revolves around scenarios where a user must
*modify their device* for it to infringe. But that is not the case here. The user does not modify their
device by using it the way it was intended to be used with the functionality that is built into the
device. *Id.* at 98:18-99:6. ***Using*** a "stub app" that causes Samsung to install something on its
devices does not require user modification at all, let alone modification sufficient to avoid
infringement under the standard advocated by Samsung; if anything, Samsung's caselaw supports
Proxense's infringement theory regarding a user's "activation" thereof. *See Silicon Graphics, Inc.
v. ATI Techs., Inc.,* 607 F.3d 784, 795 (Fed. Cir. 2010); *Fantasy Sports Props., Inc. v.
Sportsline.com, Inc.,* 287 F.3d 1108, 1118 (Fed. Cir. 2002) ("Therefore, although a user must
activate the functions programmed into a piece of software by selecting those options, the user is
only activating means that are already present in the underlying software. Otherwise, the user
would be required to alter the code to enable the computer to carry out those functions."). At best,
Samsung's motion presents a question of fact on this issue. Samsung sells—and Samsung's users
pay for—all of the advertised features of the device, which includes Samsung Pay. The jury can

find that the accused devices include all of the functionality of Samsung Pay even if some portion of the code waits to be downloaded from Samsung's server.

Samsung's argument that a device is not capable of using software that is installed automatically by the manufacturer when the user begins using it is likewise unsupported. Samsung misapprehends the finding in *Microsoft*. *See* Mot. p. 8. In *Microsoft,* the court construed the term "'download component' to mean a file or program either sent to or received by a computer in response to a request for electronic data…." among other requirements. *NetworkCom., Inc. v. Microsoft Corp*., 422 F.3d 1353, 1362 (Fed. Cir. 2005). For that reason, court required something to be **downloaded** pursuant to the construction of the claim limitation "download component"— which is absent from the claims here and thus renders *Microsoft* inapposite.

Moreover, Samsung's non-infringement position would eviscerate software infringement for all modern computers, tablets, and smartphones. Smartphones (any modern computer) run updates and install apps when they are first powered on and activated. These devices are designed to run the software that is installed on them by the manufacturer, whether out of the box or "over the air," and are sold with that functionality.  Adopting Samsung's position would suggest that any software provider could simply avoid direct infringement by pointing to that download or including "stub apps"—even when that same provider also sells the underlying supporting hardware. Samsung should not be allowed to transform a feature or software that it expressly includes into a component that is sold after the fact, triggering contributory infringement. *See, e.g., In re Bill of Lading Transmission & Processing Sys. Pat. Litig.,* 681 F.3d 1323, 1338 (Fed. Cir. 2012). The stub app is not a component sold after the fact nor does it constitute a modification by the user; it is preloaded and pre-configured by Samsung for a singular purpose—to install Samsung

Pay. Samsung's contention that this constitutes a user modification or a separate component is at odds with the current state of the law.

### 2.   Samsung Induces Infringement of Products with the "Stub App"

Alternatively, Samsung induces infringement through its stub app. Samsung's sole basis for claiming that it does not induce infringement is that allegedly there is insufficient evidence that any "stub app" ever installed Samsung Pay.[4] Even if Samsung is right that Proxense must show actual conversions from "stub app" to "full" app to prove infringement, a legal proposition for which Samsung offers no support, sufficient evidence of that exists as well. *See* Samsung's SJ Mot. at Ex. G at 209370-71. ███████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████   Samsung cannot credibly claim that no user has ever used the Samsung Pay "stub app" to install the "full" app and the jury is entitled to make that finding given the evidence.[5]

---

[4] Samsung has not moved for partial summary judgment on the basis of intent with respect to indirect infringement nor willful direct infringement. As a result, Proxense will not reiterate the ample evidence of Samsung's intent and willfulness in responding to this Motion.
███████████████████████████████████████████████████████
█

*Crystal Semiconductor*, which Samsung cites for this proposition, only deals with infringement once the device has been placed into the accused mode of operation. *See* Mot. at 13. (citing *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l*, Inc., 246 F.3d 1336, 1351 (Fed. Cir. 2001)). But Samsung's entire argument here is that the devices have allegedly never been placed into such a mode.  There exists a genuine dispute of material fact as to whether the accused devices infringe when placed into operation. Samsung has not moved for summary judgment as to infringement as to the operation of the Samsung Pay in general. This argument is therefore circular and unavailing.

### B.   Samsung is Not Entitled to Summary Judgment on the Basis of Divided Infringement

The asserted method claims of the 730, 905, and 989 patents are not susceptible to any reading that requires divided infringement. In fact, Proxense has moved for summary judgment on this issue. *See* Proxense's MSJ, Dkt No. 97 at 12-15. Samsung identifies a single representative claim limitation that, according to Samsung, requires a third party. But this limitation only requires sending or receiving data to and from a third party. What a third party does with the data is merely the environment in which the claims operate and do not constitute additional limitations to the claim. Defendants should have raised their new claim construction argument during *Markman*. *See Id*. Summary judgment should be entered in Proxense's favor on this issue. *See id.*

Even if Defendants' reading of the claims was correct, there is ample evidence that

███████████████████████████████████████████

███████████████████████████████████████████

_____

SAMSUNG_Proxense_183871; Ex. U, SAMSUNG_Proxense_186001; Ex. V, SAMSUNG_Proxense_209124.

██████████████████████████████████████████████████████████

████████████████████████    Samsung cannot claim that this fact is undisputed in the face of

documentary evidence to the contrary, discussed more fully below.

>    **1.    TSPs are Not Required for Performance of any Asserted Method Claims**

The asserted method claims do not require third party involvement. Samsung claims that

"a third-party trusted authority possessing a list of device ID codes uniquely identifying legitimate

integrated devices" requires third-party involvement. *See* Mot. at 16 n11. In this footnote, Samsung

shows only a portion of the claim limitation and only one version of it. These limitations differ,

however, among the three asserted patents. The full limitations are as follows:

| 730 Patent |
| --- |
| Claim 1: |
| A method for verifying a user during authentication of an integrated device, comprising the steps of: |
| . . . |
| responsive to a determination that the scan data matches the biometric data, **wirelessly sending one or more codes** from the plurality of codes and the other data values for authentication by an agent that is a third-party trusted authority possessing a list of device ID codes uniquely identifying legitimate integrated devices, wherein the one or more codes and other data values includes the device ID code; |
| . . . . |
| 905 Patent |
| Claim 1: |
| A method comprising: |
| . . . |
| responsive to a determination that the scan data matches the biometric data, **wirelessly sending the ID code** for comparison by a third-party trusted authority against one or more previously registered ID codes maintained by the third-party trusted authority |
| . . . . |

| 989 Patent |
|---|
| Claim 1: |
| A method comprising: |
| . . . |
| responsive to a determination that the scan data matches the biometric data, **wirelessly sending, from the smartphone, the ID code** for comparison by the third-party trusted authority, against one or more previously registered ID codes maintained by the third-party trusted authority |
| . . . . |

(emphasis added).

As a matter of law, for the claims to be susceptible to a divided infringement construction, a step in the claim would need to be *performed* by a third party. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1351–52 (Fed. Cir. 2018). The method steps in each of these claims require **sending** data for authentication and for comparison, respectively. The claims do not include, as a limitation, the additional step of using that data for authentication nor comparison.

Dr. Rubin did not opine, as Samsung claims, that the method claims require performance by a third party. When describing the above steps at his deposition, in the very testimony that Samsung's cites, Dr. Rubin clearly articulates that "**this step describes the environment that clam operates in** and, in that environment, it would be the credit card company." *See* Mot. at 16 (citing Samsung's Ex. B (Rubin 9/29 Tr.) at 216:21-217:10). Dr. Rubin went on to explain this testimony in more detail, as follows:

> Responsive to a determination that the scan data matches the biometric data, wirelessly sending one or more codes, and so the device needs to send one or more codes, and it needs to send it in such a way that it could be authenticated by a agent, that is a third-party trusted authority, but there's nothing in the claim that says that there has to be a third-party trusted authority that actually does anything, it just talks about things needing to be sent in such a way that such an authority would be able to perform certain steps.

Ex. A, Dr. Rubin Depo. Tr., 360:11-21. Samsung is relying solely on Dr. Rubin's answers to poorly worded questions, interposed over counsel's objections, to conduct an unorthodox claim construction at this late stage in this litigation; Samsung cites not one bit of intrinsic evidence nor a single case that supports its strained reading of these method claims.

Dr. Rubin's clear understanding that the claims merely recite the environment that the accused devices function is aligned with Federal Circuit law. "Because of the nature of the technology, computer and software claims typically use functional language to define the invention." *INVT SPE LLC v. Int'l Trade Comm'n, 46 F.4th 1361, 1372 (Fed. Cir. 2022)*. In *INVT*, the Federal Circuit held that claim language directed to an LTE device whose claimed function depended on the operation of a recited external base station was not divided infringement, because the recited external base station was merely a definition of the environment in which the claimed device operated. *See id.* at 1374-75.

This is well settled law. In *Uniloc*, for example, the Federal Circuit considered a claim to a "remote registration station incorporating remote licensee unique ID generating means, said station forming part of a registration system ... including local licensee unique ID generating means...." *Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292 (Fed. Cir. 2011). The Circuit found that this claim was directed to the actions of a single party and that the remainder of the claim, "said station forming part of a registration system ... including local licensee unique ID generating means," only "define[d] the environment in which that [remote] registration station must function." *Id*. at 1309; *see also Advanced Software Design Corp. v. Fiserv, Inc*., 641 F.3d 1368, 1374 (Fed. Cir. 2011). Method claim steps must be steps and not mere descriptions of the environment that the claimed steps must be performed in to trigger divided infringement. *Id.*

**2.      Samsung controls the TSPs and has Formed a Joint Enterprise with Them**

Even if the method claims did require performance by the TSPs, the documentary evidence shows that Samsung has, in fact, formed a Joint Enterprise with the TSPs. "[A]n entity will be held 'responsible for others' performance of method steps [under § 271(a)] in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.'" *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1378 (Fed. Cir. 2017) (internal citations omitted). "[L]iability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance . . . ." *Id.* Furthermore, "[w]hether a single actor directed or controlled the acts of one or more third parties is a question of fact...." *Id.* The Federal Circuit rejected the "argument that an actor can only condition the performance of a step 'by imposing a legal obligation to do so, by interposing that step as an unavoidable technological prerequisite to participation. . . .'" *Id.* at 1380.  Samsung's citation to agency law that surrounded the venue and jurisdiction dispute in *In re: Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020) is inapposite. *See* Mot. at 18. This case is in no way relates to divided infringement and the law of agency and fiduciary relationships is an inappropriate metric to apply.

Nevertheless, Samsung has conditioned performance of each of the claimed steps on a binding, legal obligation.





13

. . .



---

[6] Proxense has only included a representative sample as exhibits to this opposition to Samsung's Motion for Summary Judgment, which clearly raises an issue of fact. Should the need arise to prove divided infringement, the trial record of Samsung's joint enterprise with and control and direction over the TSPs will be far larger, including at least the following additional documents:



14

Samsung's sole complaint is that Proxense's expert has not conducted an analysis of all of these agreements. This is a red herring. A technical expert's opinion as to the import of a legal document creating a joint enterprise is neither necessary nor proper. *See Wealthmark Advisors Inc. v. Phoenix Life Ins. Co.*, No. SA16CA00485FBESC, 2017 WL 1133506, at *1, 5 (W.D. Tex. Mar. 24, 2017). Here, there at least exists a genuine issue of material fact as to Samsung's joint enterprise with and control over TSPs. The above agreements evince much more control than the MOU that was at issue in *Travel Sentry*.

Finally, Proxense's expert did provide sufficient analysis of how Samsung **controls** the manner or timing of the TSPs' performance through technological means as that phrase is defined in *Travel Sentry*. 877 F.3d at 1378 ("[A]n entity will be held "responsible for others' performance of method steps [under § 271(a)] in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise."") (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)). Control, in turn, relates to the manner or timing of that performance. *Id.*

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Thus, these steps are controlled by Samsung. This alone provides an independent basis for the question of whether Samsung controls the TSPs should reach the jury.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

_____

████████████████████████████████████████████████████
████████████████████████████████

**C.     Samsung is Not Entitled to Summary Judgment Limiting Damages for Method Claims**

Samsung seeks partial summary judgment of noninfringement of the method claims.  *See* Mot. at 20.  But Samsung cannot contend that there is no evidence (direct or circumstantial) of direct infringement of the method claims here. Indeed, Samsung merely seeks a limited ruling that caps the possible damages base for infringement of the asserted method claims to ███████ ████████████████████████████████████████████████████████████  *See* ECF No. 100 at 22 (citing SAMSUNG_Proxense_209362).  The remedy sought is premature; Proxense asserts both method and apparatus claims and can, therefore, still recover damages for infringement of apparatus claims based on total sales of all accused products.  Furthermore, factual questions regarding the scope of infringement of the method claims preclude summary judgment.  Finally, the jury need not be limited to acts of actual infringement of method claims when considering the hypothetical negotiation under *Georgia-Pacific*, since that analysis is necessarily forward looking and would occur before the scope of any infringement is known by either party.

**1.     Samsung's Motion is Premature**

Samsung's motion seeks a premature remedy—the damages base for apparatus claims is unchallenged, and essentially focuses on what should be dealt with by a jury instruction.

Samsung cites cases in which only method claims were asserted. But where both apparatus and method claims are asserted, courts have held that summary judgment on a damages ceiling of infringement for method claims is not helpful, since damages above that ceiling can still be awarded for infringement of apparatus claims.  *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1358 (Fed. Cir. 2009) ("While both [method and apparatus] claims were at issue during trial, St. Jude would not have benefited if it had moved to limit damages because the

damages on the apparatus claims would have covered any sale of an apparatus that could execute the elements of the claims.  However, now only a method claim is at issue; thus, St. Jude stands to benefit from limiting damages to devices that actually practice the method.").

Jury instructions are a superior method by which to address Samsung's concern.

### 2.      Disputed Factual Issues as to the Damages Base Preclude Summary Judgment

Beyond the prematurity of Samsung's motion, questions of fact preclude summary judgment on this issue.   For example, Chris Pickering (Samsung's financial corporate representative), who testified about the card registration data on which Samsung relies, identified several limitations affecting the interpretation of those data. ███████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

█████████████████████████

The jury can find acts of infringement of method claims based on circumstantial evidence.

*See Liquid Dynamics Corp. v. Vaughan Co*., 449 F.3d 1209, 1219 (Fed. Cir. 2006). ███████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████

Where factual disagreements exist as to the number of devices used to practice the claimed method, and the jury will be able to consider circumstantial evidence that the number of acts is greater than the specific number Samsung mentions, summary judgment is not appropriate.  This issue, to the extent it remains at trial, can and should be addressed by jury instruction.

### 3.       Samsung Seeks A Remedy at Odds with Accepted Damages Analysis

Samsung also overstates the principle that a damages base for infringement of a method claim should be limited to specific instances of infringement. *See* Mot. at 22 (citing *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1358–59 (Fed. Cir. 2009). Indeed, the Federal Circuit has observed that "we have never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence." *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009); *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1356 (Fed. Cir. 2022) ("[T]his court 'has recognized that in some instances, a royalty based upon actual use of a method – as opposed to a royalty applied to the sale of a device that practices the method – is impractical in view of real-world considerations.'").  The damages analysis for method claims is not as simple as counting up the devices sold or used. Instead, "the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention."  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).  Even for method claims, this does not require that the upper limit of damages be based solely on acts of proven practice of the claimed method, where

19

the value of being able practice the claimed method is also a consideration for the hypothetical negotiation.  *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1080 (Fed. Cir. 1983).

This is because a jury considering damages can properly assess the various *Georgia-Pacific* factors under the hypothetical negotiation, which is an inquiry made from the perspective of the parties prior to any infringement, when the scope of future acts of infringement is not known. *See Georgia–Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y.1970) ("[T]he hypothetical negotiation or the "willing licensor-willing licensee" approach, attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."); *ResQNet.com*, 594 F.3d at 868 ("reasonable royalty" derives from a hypothetical negotiation between the parties when the infringement began). And the Federal Circuit has observed that real-world negotiations in the relevant high technology field achieve "licensing deals in which the amount paid for a particular technology is not necessarily limited to the number of times a patented feature is used by a consumer." *Lucent*, 580 F.3d at 1334.  This follows where the payment amount is not tied strictly to usage, given that monitoring actual usage can be impracticable, but also that the accused infringer gains value "simply by having the patented invention available for use." *Id.*  At minimum, factual questions exist as to such issues that preclude summary judgment.

For example, Proxense's expert witness Dr. Marais testified about his survey analysis of what consumers value when deciding to purchase a smartphone, (*e.g.*, Ex. Q, Marais Tr. 73:19-25) and that that decision is affected by whether the device can use the patented invention (*e.g.*, *id.* at 133:1-134:14, 154:1-12).  Proxense's damages expert, Jennifer Vanderhardt, accounted for such value of the claimed technology in her assessment of the *Georgia-Pacific* factors, which a reasonable jury could credit when considering the damages calculation.  *See Sprint Commc'ns Co.,*

20

*L.P. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 983 (Fed. Cir. 2019) ("[T]he objective of apportionment can be achieved in different ways, one of which is through the jury's determination of an appropriate royalty by applying the so-called *Georgia-Pacific* factors, under proper instructions embodying apportionment principles."); Ex. R, Expert Report of Jennifer Vanderhart, Ph.D. at ¶¶85-138. Samsung's ability to sell devices can be affected by Samsung's inclusion of the claimed technology in its devices.

Samsung's motion ignores the hypothetical negotiation and the *Georgia-Pacific* analysis when addressing this portion of relief sought. Factors relevant to this analysis include the value to Samsung of simply having access to the patented invention, challenges in monitoring acts of usage,

and other factors in the *Georgia-Pacific* framework that would tend to support a damages base of total infringing products sold, rather than solely devices used to commit acts of direct infringement. Admissible evidence, such as the examples mentioned above, is available that would tend to support Proxense's position on a damages base.  Viewed against the backdrop of the numerous questions of fact and other issues mentioned above, Samsung's failure to explain why a jury could not consider *Georgia-Pacific* factors in a hypothetical negotiation is sufficient to deny Samsung's motion on this issue.

### D. Samsung Cannot Argue that there are Differences Between Software Versions

Samsung's motion for summary judgment of non-infringement of the asserted claims prior to October 2020 is based on a false premise: that "**no** evidence" exists to create a genuine dispute of material fact insofar as infringement of the accused devices in that time frame. Mot. at 23-24. Not only is Samsung wrong, as Dr. Rubin relies on both internal documents and Samsung code for support, but Samsung's argument is at odds with Samsung's conduct in discovery and the testimony from Samsung's corporate and expert witnesses.

As a threshold matter, Dr. Rubin does not "rel[y] exclusively" on version 2.2 of the "EMV Payment Tokenisation Specification, Technical Framework" dated October 2020.  Mot. at 23. ███

███████████████████████████████████████████████

████████████████████████████████████████ Ex. F, Expert Report of Avi Rubin at ¶¶ 169-172 (citing to Samsung internal documents).  Dr. Rubin also cites to Samsung **source code** that supports his opinion.  *Id*. at ¶¶ 185-186.  Samsung appears to be blind to these and other portions of Dr. Rubin's report which rely on sources other than the EMV specification.

Moreover, Samsung cannot argue that the code for the EMV Payment Tokenisation Spec has changed. Samsung's argument hinges on Dr. Nielson's speculation that the code ***may*** have

changed when the specification changed. *See* Ex. E, Seth Neilson Depo. Tr. at 229:4-15 ("…there

would obviously have to be differences in the source code as the EMV standard changed."); *id*. at

229:16-230:8. 

Finally, the Court should not penalize Proxense simply because Samsung restricted its

production to a single version of code. The version of the code Samsung produced related to its

2020-2021 products and thus the EMV specification versions Dr. Rubin relied upon (v.2.2 and

2.3) were applicable to that code. Because of Samsung's discovery conduct and the testimony of

its expert and corporate representative, Samsung should be precluded from arguing that any

differences exist for purposes of infringement between versions of code it has in its possession but

refused to produce. Accordingly, proving infringement for one version proves infringement for all

accused devices.   And even if Dr. Rubin solely relied on versions 2.2 or 2.3 of the EMV

specification, as Samsung asserts, infringement has been demonstrated by Proxense's expert.

To further compound the issue, Samsung also suggests that Proxense should be required to

provide "evidence of the role [of] EMV payment tokens, which are required for every claim of every asserted patent…" Mot. at 24. As demonstrated above, Samsung is incorrect that the TSP's actions are required for infringement. Samsung is raising the same argument here. Moreover, as shown above, Dr. Rubin relies on evidence beyond just the EMV specification that Samsung Pay utilizes a unique token per device.

Despite its discovery conduct and its representation that its source code never materially changed, both through testimony and acquiescence by its counsel, Samsung now claims that Proxense should have proved infringement for all versions separately. But Samsung cannot simply ignore the history of discovery in this case. Samsung's motion for summary judgment must fail.

## II.     CONCLUSION

For the foregoing reasons, Proxense requests that the Court deny Samsung's Motion for Summary Judgment.

Dated: October 31, 2022                      Respectfully submitted,

                                             /s/ David L. Hecht
                                             David L. Hecht (**Lead Counsel**)
                                             dhecht@hechtpartners.com
                                             Maxim Price (pro hac vice)
                                             mprice@hechtpartners.com
                                             Conor B. McDonough (pro hac vice)
                                             cmcdonough@hechtpartners.com
                                             Yi Wen Wu (pro hac vice)
                                             wwu@hechtpartners.com
                                             Hecht Partners LLP
                                             125 Park Avenue, 25th Floor
                                             New York, New York 10017
                                             Telephone: (212) 851-6821


                                             Brian D. Melton
                                             bmelton@susmangodfrey.com
                                             Geoffrey L. Harrison
                                             gharrison@susmangodfrey.com
                                             Meng Xi

mxi@susmangodfrey.com
Bryce T. Barcelo
bbarcelo@susmangodfrey.com
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7807
Facsimile: (713) 654-6666
Counsel for Plaintiff Proxense, LLC

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 31, 2022, this document properly was served on counsel of record via electronic filing and for documents under seal via e-mail in accordance with the USDC, Western District of Texas Procedures for Electronic Filing.

/s/ David L. Hecht     
David L. Hecht
